1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

COMCAST CABLE
COMMUNICATIONS, LLC,

      Plaintiff,

  v.

OPENTV, INC., and NAGRAVISION SA,

      Defendants.

_____/

No. C 16-06180 WHA

**ORDER RE MOTION TO
STRIKE AND MOTION TO
AMEND INFRINGEMENT
CONTENTIONS**

**INTRODUCTION**

    In this action for declaratory judgment of patent noninfringement, plaintiff moves to strike the patent owners' infringement contentions for failure to comply with Patent Local Rule 3-1. The patent owners oppose and separately move to amend their infringement contentions. Plaintiff's motion to strike is **GRANTED IN PART** and **DENIED IN PART**. The patent owners' motion to amend is **GRANTED** subject to the conditions stated herein.

**STATEMENT**

    This patent dispute began in October 2015, when defendants OpenTV, Inc., and Nagravision SA, both subsidiaries of Kudelski SA, approached plaintiff Comcast Cable Communications, LLC, to negotiate a licensing deal based on the premise that certain Comcast products infringed Kudelski's patent portfolio.

In October 2016, Comcast filed this action for declaratory judgment of noninfringement of certain patents from Kudelski's portfolio.[1]

After an initial case management conference, a case management order set forth a procedure for pilot summary judgment motions from both sides as to one chosen claim per side (Dkt. No. 82). Since then, the parties have agreed to cross-move for early summary judgment as to the same claim (claim 1 of the '595 patent) (Dkt. No. 114). The patent owners have also notified Comcast of their intent to provide covenants not to sue on four of the patents asserted in this case (*id.* at 1 n.1). Under the current case management schedule, fact discovery for the pilot summary judgment motions will close on June 2 and the motions will be filed on June 26, to be heard on August 3 (Dkt. No. 135).

On March 27, the patent owners answered and counterclaimed for infringement of the '082, '139, '327, '389, '461, '586, and '595 patents. On April 3, Comcast moved to dismiss count four of the counterclaim, which concerns the '139 patent (Dkt. No. 96). On April 17, the patent owners opposed the motion to dismiss and separately cross-moved to amend their infringement contentions for the '139 patent (Dkt. Nos. 99–100). On April 24, the patent owners filed a first amended answer and counterclaim (Dkt. No. 105), thereby mooting the motion to dismiss and the cross-motion to amend infringement contentions for the '139 patent (*see* Dkt. No. 138 at 11:25–12:21).

On April 19, the patent owners filed another motion to amend their infringement contentions as to the '586 patent (Dkt. No. 101). On April 20, Comcast moved to strike the infringement contentions as to the '082, '139, '461, '586, and '595 patents with prejudice (Dkt. No. 102). This order follows full briefing and oral argument.[2]

---

[1] The initial complaint concerned ten patents — 6,530,082 ("the '082 patent"), 7,243,139 ("the '139 patent"), 7,900,229 ("the '229 patent"), 5,907,322 ("the '322 patent"), 7,028,327 ("the '327 patent"), 6,799,328 ("the '328 patent"), 6,345,389 ("the '389 patent"), 6,725,461 ("the '461 patent"), 6,985,586 ("the '586 patent"), and 6,895,595 ("the '595 patent"). The amended complaint added three additional patents — 8,356,188 ("the '188 patent"), 7,725,720 ("the '720 patent"), and 7,725,740 ("the '740 patent"). Proceedings as to the latter three patents, however, remain stayed pending parallel proceedings in Texas (*see* Dkt. No. 81 at 12).

[2] Proceedings as to the '327 and '389 patents remain stayed pending the final determination of the United States International Trade Commission (Dkt. No. 93).

**ANALYSIS**

1.     **COMCAST'S MOTION TO STRIKE.**

As a preliminary matter, the patent owners contend Comcast's motion to strike should be denied as "procedurally deficient" because Comcast did not meet and confer prior to filing pursuant to Civil Local Rule 37-1(a) (Dkt. No. 111 at 5–7). That rule falls under CLR 37, which concerns "motions to compel disclosure or discovery or for sanctions," and states, "The Court will not entertain a request or a motion to resolve a disclosure or discovery dispute unless, pursuant to Fed. R. Civ. P. 37, counsel have previously conferred for the purpose of attempting to resolve all disputed issues." The patent owners posit that CLR 37-1(a) applies to Comcast's motion to strike because "[a] motion to strike a party's *disclosure* of asserted claims and infringement contentions, by definition, constitutes a 'disclosure or discovery dispute.'" (Dkt. No. 111 at 6 (emphasis in original)).

This myopic focus on the word "disclosure" ignores the substance and context of CLR 37. Each provision of that rule (save and except for CLR 37-4, which concerns motions for sanctions) unambiguously concerns *discovery* disputes and motions to compel *discovery*. Furthermore, Federal Rule of Civil Procedure 37, which provides the context for CLR 37, makes clear that motions to compel "disclosure" thereunder contemplate *discovery* disclosures required by FRCP 26(a). *See* F.R.C.P. 37(a). Thus, contrary to the patent owners, mere overlap of the word "disclosure" between CLR 37 and PLR 3-1 does not suggest that the meet-and-confer requirement of the former should apply to the latter. None of the decisions cited by the patent owners so held. This order therefore declines to deny as "procedurally deficient" Comcast's motion to strike and proceeds to consider the motion on its merits.[3]

Comcast contends the patent owners' infringement contentions violate PLR 3-1 by (1) relying too much on "information and belief," (2) charting asserted claims for only one or two accused products despite purporting to accuse more products of infringement, (3) asserting

---

[3] In response to Comcast's criticisms that their infringement contentions fall short of complying with PLR 3-1, the patent owners occasionally mention that they would have "clarified" their infringement theories had Comcast simply met its obligation to meet-and-confer prior to filing its motions (*see* Dkt. No. 111 at 17 n.15, 19 n.18). This is a non-starter because Comcast had no such obligation, and in any case the possibility of informal elucidation would not absolve the patent owners of their responsibility to comply with PLR 3-1.

indirect infringement theories in generic terms by merely tracking the pertinent statutory language, (4) using only boilerplate language to assert infringement under the doctrine of equivalents, and (5) failing to specifically identify the patent owners' own "instrumentalities and products purportedly embodying the '139 Patent" (Dkt. No. 102 at 3).

### A. Allegations Upon "Information and Belief."

Comcast argues that the patent owners' infringement contentions should be stricken for lack of "pre-suit investigation" because their reliance on "information and belief" violates PLR 3-1(c) (*see* Dkt. No. 102 at 5–10). That rule requires only "[a] chart identifying specifically where and how each limitation of each asserted claim is found within each Accused Instrumentality, including for each limitation that such party contends is governed by 35 U.S.C. § 112(6), the identity of the structure(s), act(s), or material(s) in the Accused Instrumentality that performs the claimed function." It does not prohibit allegations made upon "information and belief." Indeed, reading PLR 3-1 as a whole makes clear that it requires *specific allegations* but not *evidence* of infringement at the disclosure stage. *See, e.g.*, P.L.R. 3-1(b) (requiring identification of each accused instrumentality "of which the party is aware" to be "as specific as possible" to the extent known).

Comcast points out that PLR 3-1(c) "necessitates a level of detail that reverse engineering or its equivalent would provide" (Dkt. No. 102 at 10). *Infineon Techs. v. Volterra Semiconductor*, No. C 11–06239 MMC (DMR), 2013 WL 322570, at *4 (N.D. Cal. Jan. 28, 2013). Yet PLR 3-1 "does not necessarily require the patent holder to produce evidence of infringement." The purpose of the rule is "to further the goal of full, timely discovery and provide all parties with adequate notice of and information with which to litigate their cases." It therefore distinguishes "between the required identification of the precise element of any accused product alleged to practice a particular claim limitation, and every evidentiary *item of proof* showing that the accused element did in fact practice the limitation." *AntiCancer, Inc. v. Pfizer, Inc.*, 769 F.3d 1323, 1330–31 (Fed. Cir. 2014) (quotation omitted) (interpreting PLR 3-1 based on decisions from this district). This distinction is particularly appropriate here since the patent owners contend, and Comcast does not dispute, that their ability to reverse engineer the

accused products has been limited because Comcast "prevents access to its source code and encrypted data streams" and "contractually restrict[s] what a customer can do to examine its set-top boxes" (*see* Dkt. Nos. 111 at 8–9; 118 at 5).

Applying the foregoing principles here, Comcast's motion to strike essentially argues that the infringement contentions here lack *evidentiary* support, but this does not compel the further conclusion that the contentions lack the *specificity* required by PLR 3-1 (*see* Dkt. No. 118 at 6–9). Comcast cites a laundry list of decisions from this district for the proposition that reliance on "information and belief" in infringement contentions is improper under PLR 3-1 (Dkt. No. 102 at 10). Those decisions, however, actually stand for the different proposition that *improper* reliance on "information and belief" in lieu of specific factual allegations violates PLR 3-1 where the resulting infringement contentions are too vague and conclusory to provide reasonable notice as to why the patent owner believes it has a reasonable chance of proving infringement. *See Tech. Props. Ltd. LLC v. Samsung Elecs. Co., Ltd.*, 114 F. Supp. 3d 842, 850 (N.D. Cal. 2015) (Judge Paul Grewal); *Solannex, Inc. v. MiaSole, Inc.*, No. 11–CV–00171–PSG, 2013 WL 1701062, at *2–4 (N.D. Cal. Apr. 18, 2013) (Judge Paul Grewal); *Theranos, Inc. v. Fuisz Pharma LLC*, Nos. 11–cv–05236–YGR, 12–cv–03323–YGR, 2012 WL 6000798, at *5–6 (N.D. Cal. Nov. 30, 2012) (Judge Yvonne Rogers).

That is not our case. This order discusses as an illustrative example the proposed amended infringement contentions for the '586 patent, which also bear on the patent owners' separate motion to amend. Comcast accuses the proposed amended infringement contentions of relying *solely* on "information and belief" to allege, without any explanation, that an "operating centre" transmits necessary data to Comcast's set-top boxes (Dkt. No. 118 at 8–9). Actually, entire pages of the proposed amended infringement contentions are dedicated to illustrative screenshots that provide factual predicates supporting the patent owners' allegation, on "information and belief," that an operating center transmits necessary data to the set-top boxes (Dkt. No. 101-3 at 37–49). Some screenshots show messages indicating that set-top boxes require "authorization" for use, and others show "On Demand" features that stream television

programs directly from the Cloud, both suggesting that set-top boxes are capable of receiving data directly from an operating center (*e.g.*, *id.* at 42).

During oral argument, the undersigned judge also repeatedly invited counsel for Comcast to present their best example of improper reliance on "information and belief" in the infringement contentions. Counsel made several attempts but ultimately did not identify any example that would warrant striking with prejudice (*see* Dkt. No. 138 at 14:3–36:5). That lengthy colloquy, during which both sides and the undersigned judge examined Comcast's best examples in excruciating detail, need not be repeated here. The upshot is Comcast has not shown that the patent owners improperly relied on "information and belief" so as to warrant striking of their infringement contentions.

### B. Use of "Representative" Accused Products.

Comcast also argues that the infringement contentions violate PLR 3-1(c) by failing to chart asserted claims as to each accused product. *See* P.L.R. 3-1(c) (requiring "[a] chart identifying specifically where and how each limitation of each asserted claim is found within *each Accused Instrumentality*" (emphasis added)). Despite the absolute phrasing of PLR 3-1(c), "representative infringement contentions may suffice" when "supported by adequate analysis showing that the accused products share the same critical characteristics." *Network Protection Sciences, LLC v. Fortinet, Inc.*, No. C 12–01106 WHA, 2013 WL 5402089, at *3 (N.D. Cal. Sept. 26, 2013).

Taking again the example of the '586 patent, this order agrees that the patent owners have not adequately shown that their purportedly representative claims in fact share the same critical characteristics as other accused products. That patent "discloses a system and a method for distributing content by and between an operating centre and a plurality of user units" (Dkt. Nos. 90 at 26; 84-6). The patent owners argue in their briefing that the proposed amended infringement contentions are adequate because all of the accused products "support AnyRoom DVR functionality" (Dkt. No. 111 at 14–15). The proposed amended infringement contentions, however, actually state (Dkt. No. 101-3 at 1 (emphasis added)):

> The products associated with the accused systems ("the Accused Products") include, *but are not limited to*, Comcast servers, ARRIS

> and Pace XFINITY X1-enabled devices *that support AnyRoom DVR functionality*, including but not limited to: XG1 models . . . XG2 models . . . RNG models . . . Xi3 models . . . XiD models . . . and Xi5 models . . . and other products that are *the same as or substantially similar to these devices*.

So, contrary to the patent owners' argument, their proposed amended infringement contentions expressly undermine the purported typicality of their charted products by refusing to limit the universe of accused products based on that typicality. Comcast's objection to the improper use of "representative" infringement contentions is therefore well-taken.

For this reason and the additional reasons discussed during oral argument (*see* Dkt. No. 138 at 29:16–37:14), this order makes clear that, notwithstanding the strategic language quoted above, the patent owners will be strictly limited to accusing products that truly fit the theories described in their infringement contentions. The patent owners do *not* have leave to amend to add explanations about how the charted accused products are representative of other accused products. Nor do they have leave to amend to chart additional "representative" products.

## C. Generic Indirect Infringement Theories.

Comcast further contends the patent owners disclosed "bare bones and conclusory indirect infringement contentions" in violation of PLR 3-1(d), which requires, "For each claim which is alleged to have been indirectly infringed, an identification of any direct infringement and a description of the acts of the alleged indirect infringer that contribute to or are inducing that direct infringement. Insofar as alleged direct infringement is based on joint acts of multiple parties, the role of each such party in the direct infringement must be described." The patent owners respond that they intend to pursue an indirect infringement theory only as to the '595 patent if given leave to amend their infringement contentions, and that said theory is adequately disclosed in the infringement contentions.[4]

---

[4] This representation is inconsistent with the patent owners' actual infringement contentions. For example, the patent owners' opposition brief states that "In [their] proposed amended contentions . . . [they] assert[] only claim 4 of the '586 Patent and do[] not pursue an indirect infringement theory" (Dkt. No. 111 at 16 n.14). But the proposed amended infringement contentions for the '586 patent open with the same boilerplate language about indirect infringement as do all other infringement contentions disclosed by the patent owners (Dkt. No. 101-3 at 1). This order credits counsel's statement in briefing over the aforementioned boilerplate language and understands that the patent owners will assert indirect infringement only as to the '595 patent if given leave to amend.

The patent owners do not dispute Comcast's assertion that the infringement contentions for the '595 patent, like all infringement contentions for the patent owners, open with boilerplate language about indirect infringement that does not satisfy PLR 3-1 (*see* Dkt. No. 90-1 at 1). They contend, however, that the body of their infringement contentions adequately discloses their indirect infringement theory, citing *Blue Spike LLC v. Adobe Systems, Inc.*, Case No. 14–cv–01647–YGR (JSC), 2015 WL 335842, at *7 (N.D. Cal. Jan. 26, 2015) (Judge Jacqueline Corley), for the proposition that "courts in this District have upheld indirect infringement contentions so long as the plaintiff discloses sufficient information to set forth its theory of infringement, identifies a particular product line that was sold to customers, and contends that the indirect infringement occurs when the customer uses the technology" (Dkt. No. 111 at 16).

Based on this proposition, the patent owners argue that their incorporation of "specific references to, and screenshots of, Comcast's website and user manuals touting the accused features or instructing customers how to use them" suffices to disclose their indirect infringement theory. A footnote to the foregoing argument, however, acknowledges that the patent owners "did not expressly tie Comcast's marketing materials to [their] allegations of direct infringement" but nevertheless insists that "the substance of [their] contentions revealed [their] theories of indirect infringement" (Dkt. No. 111 at 17 & n.15). Significantly, *Blue Spike* — after the section quoted by the patent owners — went on to conclude, "although Blue Spike included advertisements for Adobe's products in support of its [infringement contentions], it neither specifies which particular product each advertisement endorsed nor indicates which advertisement led to infringing behavior. Such circumstances create only insufficient boilerplate allegations of indirect infringement." 2015 WL 335842, at *7 (citing *Creagri, Inc. v. Pinnaclife Inc., LLC*, No. 11–cv–06635–LHK–PSG, 2012 WL 5389775, at *5 (N.D. Cal. Nov. 2, 2012) (Judge Paul Grewal)).

In other words, boilerplate language that simply claims an accused infringer provided instructions on, advertised, or promoted the use of an accused product, without describing which instructions, advertisements, or promotions led to what infringing behavior, does not

suffice under PLR 3-1(d). *See France Telecom, S.A. v. Marvell Semiconductor, Inc.*, No. 12–cv–04967 WHA (NC), 2013 WL 1878912, at *5 (N.D. Cal. May 3, 2013) (Judge Nathanael Cousins) (citing *Creagri*, 2012 WL 5389775, at *5). Here, because the patent owners admittedly failed to tie Comcast's marketing materials to their allegations of direct infringement, they have not adequately disclosed their indirect infringement theory as required by PLR 3-1(d).

### D. Boilerplate Assertions re Doctrine of Equivalents.

Comcast also contends that neither the current nor the proposed amended infringement contentions for the '586 patent adequately disclose the asserted theory of infringement under the doctrine of equivalents as to that patent (Dkt. No. 102 at 17). The patent owners respond that both versions of their infringement contentions for the '586 patent adequately show equivalence on a limitation-by-limitation basis because both versions explain that "the accused Comcast Operating Center, or headend, transmits an authorization to a second set-top box to decrypt a DVR recording (*i.e.*, the "function"), through a box restart or reset by a customer or XFINITY agent (*i.e.*, the "way"), which allows the second set-top box to decrypt the DVR recording from the primary box (*i.e.*, the "result")" (Dkt. No. 111 at 18–19).

The relevant portions of the infringement contentions actually cited by the patent owners, however, provide the foregoing explanation only in support of assertions of literal infringement. They provide no explanation whatsoever as to how the accused products infringe under the doctrine of equivalents even if they do not literally infringe (*see* Dkt. Nos. 90-3 at 30–34; 101-3 at 37–49). This order therefore agrees with Comcast that neither the current nor the proposed amended infringement contentions for the '586 patent adequately disclose a theory of infringement under the doctrine of equivalents.

### E. Identification of Patent Owners' Own Instrumentalities.

Finally, Comcast argues that the patent owners have not complied with PLR 3-1(g) as to the '139 patent. That rule states, "If a party claiming patent infringement wishes to preserve the right to rely, for any purpose, on the assertion that its own or its licensee's apparatus, product, device, process, method, act, or other instrumentality practices the claimed invention, the party

shall identify, separately for each asserted claim, each such apparatus, product, device, process, method, act, or other instrumentality that incorporates or reflects that particular claim." The patent owners respond that, "[f]or the purpose of this litigation only, [they] no longer intend[] to rely on the assertion that [their] products practice the '139 Patent" (Dkt. No. 111 at 1 n.2). This order therefore does not address this point further.

## F. Leave to Amend.

Comcast argues that the patent owners should not be allowed to amend their infringement contentions because such amendment would be futile and they have not shown good cause for the amendment pursuant to PLR 3-6.

*First*, this order disagrees with Comcast that amendment to cure the deficiencies pointed out in its motion to strike would be futile. *Second*, in this district, motions to strike initial infringement contentions are frequently treated as motions to compel amendment of said infringement contentions. *Geovector Corp. v. Samsung Elecs. Co. Ltd.*, Case No. 16-cv-02463-WHO, 2017 WL 76950, at *7 (N.D. Cal. Jan. 9, 2017) (Judge William Orrick). In *Geovector* the accused infringer, like Comcast here, sought to strike the patent owner's infringement contentions and to require the patent owner to seek leave to amend with a showing of good cause under PLR 3-6. Judge Orrick observed, "While some courts have required a party asserting infringement to show good cause before being granted leave to amend initial contentions, many have simply compelled the asserting party to file compliant infringement contentions." Although the initial contentions in *Geovector* were "clearly deficient," striking with prejudice was unwarranted because it was the first time the accused infringer had moved to strike and many of the identified issues appeared curable with amendment. *Ibid.*

Under the circumstances here, this order agrees that striking with prejudice is unwarranted, at least at this stage. It therefore treats Comcast's motion to strike as a motion to compel amendment of the infringement contentions so that the patent owners will have an opportunity to cure the deficiencies therein.

## 2.     PATENT OWNERS' MOTION TO AMEND.

The patent owners' separate motion to amend their infringement contentions, however, does require analysis under PLR 3-6 because it does not seek amendment solely to address deficiencies identified in Comcast's motion to strike.  PLR 3-6 permits amendment of infringement contentions upon a timely showing of good cause.  The good cause inquiry considers (1) the diligence of the moving party and (2) prejudice to the nonmoving party.  The rule is designed to prevent the "shifting sands" approach to claim construction. *E.g.*, *Symantec Corp. v. Acronis Corp.*, Case No.: 11–5310 EMC (JSC), 2013 WL 5368053, at *3 (N.D. Cal. Sept. 25, 2013) (Judge Jacqueline Corley).

*First*, the patent owners seek amendment to (1) eliminate references to patents for which they have given Comcast covenants not to sue, (2) correct a typographical error, and (3) omit references to their own products previously alleged to practice the patents in suit (Dkt. No. 101 at 1 & n.1).  The first proposed amendment reflects covenants not to sue that materialized very recently in this litigation, so the patent owners have been diligent in moving on that basis.  The patent owners have also been diligent in seeking the second proposed amendment to correct typographical errors in their initial infringement contentions, which they served approximately one month ago.  The third proposed amendment is not dependent on a showing of good cause under PLR 3-6 because it directly addresses a deficiency pointed out in Comcast's motion to strike.  Additionally, all three proposed amendments would narrow the scope of the case.  None would constitute a "shifting sands" approach to claim construction or prejudice Comcast.

*Second*, the patent owners seek amendment to add in claim 4 of the '586 patent because "Comcast has created a controversy over claim 4" in its second amended complaint.  "To maintain the relative scope of this action and eliminate any risk of prejudice," the patent owners have offered to withdraw allegations concerning claim 1 if granted leave to amend (*id.* at 1). (The patent owners do not, however, agree that judgment of noninfringement should be entered in Comcast's favor as to claim 1.)  Comcast opposes the motion because it did not learn of the patent owners' intent to assert claim 4 of the '586 patent until approximately 48 hours before it had to select a claim for pilot summary judgment, and it has already served invalidity

1    contentions for claim 1 (Dkt. No. 108 at 1).  Comcast points out that it has consistently asserted

2    that it does not violate *any* claim of the '586 patent, but it did not specifically mention claim 4

3    as an *example* of noninfringement until the second amended complaint (*compare* Dkt. No. 24 at

4    14 *with* Dkt. No. 84 at 14).

5         This order concludes the patent owners may amend their infringement contentions to

6    substitute claim 4 for claim 1 of the '586 patent on the conditions that (1) the amended

7    infringement contentions fully comply with the requirements of PLR 3-1, and (2) Comcast is

8    also permitted to amend its invalidity contentions to include claim 4.

9                                    **CONCLUSION**

10        For the foregoing reasons, Comcast's motion to strike is **GRANTED IN PART** insofar as it

11   essentially seeks to compel the patent owners to comply with PLR 3-1 but **DENIED IN PART**

12   insofar as it seeks to strike their infringement contentions with prejudice.  The patent owners

13   shall amend their initial infringement contentions to fully comply with PLR 3-1 in all respects

14   (not just to cure deficiencies specifically identified in this order) by **JUNE 26 AT NOON**.  Their

15   separate motion to amend is **GRANTED** subject to the conditions stated herein.

16        Going forward, except for discovery disputes, no motions may be filed in this action

17   without the Court's advance permission.  A party seeking to file a motion must submit a précis

18   summarizing the key arguments from and relief sought by the proposed motion, as well as its

19   timing needs.  The opposing side will then have **48 HOURS** to submit a response.  The précis and

20   the response are each limited to **THREE PAGES** in length (12-point font, double-spaced, with no

21   footnotes or attachments) and must state whether the proposed motion would be argued by a

22   young attorney.  After considering the précis and response (if any), the Court will either grant or

23   deny leave to file the motion.  If leave is granted, a briefing schedule and hearing will be set.

24

25        **IT IS SO ORDERED.**

26

27   Dated:  June 19, 2017.

28                                    WILLIAM ALSUP
                                     UNITED STATES DISTRICT JUDGE